UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 2011-89 (WOB-CJS)

ELIZABETH A. OSBORN                                    PLAINTIFF

VS.

JOHN M. GRIFFIN, ET AL.                                DEFENDANTS


and


CIVIL ACTION NO. 2013-32 (WOB-CJS)

LINDA G. HOLT, ET AL.                                  PLAINTIFFS

VS.

DENNIS B. GRIFFIN, ET AL.                              DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on defendants' motions to dismiss (Docs. 16, 17), plaintiffs' motion for hearing (Doc. 51), defendants' motion for judicial notice (Doc. 76), and defendants' appeal from the Magistrate Judge's ruling on their motion for protective order as to the deposition of Dennis B. Griffin (Doc. 72).

The Court held a hearing on these motions on Wednesday, September 4, 2013. Kent Wicker and Jennifer Schultz represented the *Holt* plaintiffs, and Janet Jakubowicz and Benjamin Lewis represented plaintiff

Elizabeth Osborn.  Joseph Callow and John Floyd represented the Griffin defendants and Martom Properties.  George Jonson represented defendant Keating, Meuthing & Klekamp, PLL.  Also present were Christopher Griffin and Gasser Callow, in-house counsel for Griffin Industries; plaintiffs Judith Prewitt, Cynthia Roeder, and Elizabeth Osborn; and defendants John M. Griffin and Robert Griffin.  Official court reporter Joan Averdick recorded the proceedings.

### *Background*

These cases arise out a family dispute among the children of Griffin Industries, Inc.'s founder, John L. Griffin ("Father"), involving the probate of Father's estate and the conveyance of several properties.  Four sisters -- Elizabeth ("Betsy"), Linda, Judith, and Cynthia ("Cyndi") --  have sued three of their brothers:  John M. Griffin ("Griffy"), Dennis B. Griffin ("Dennis"), and Robert Griffin ("Robert") (collectively "the brothers").

The Court also handled a prior lawsuit Betsy brought against her brothers related to the handling of their mother's estate, which was settled in 1993.  *Osborn v. Griffin*, Cov. Civil Action No. 90-209.

The complete factual allegations of these matters need not be set forth in full here, but they will be discussed below in relation to the pending motions.

Betsy filed her current lawsuit on April 27, 2011. In her Amended Complaint (Doc. 26), Betsy asserts the following claims: (1) Breach of Fiduciary Duties as Trustees (Griffy and Dennis); (2) Breach of Fiduciary Duties as Executors; (3) Civil Conspiracy/Aiding and Abetting (all defendants); (4) Tortious Interference with Inheritance (all defendants); (5) Fraudulent Conveyance in Violation of KRS 378.010 (Griffy and Dennis); and (6) Negligence and/or Gross Negligence Arising out of Estate and Trust Administration (Griffy and Dennis).

Defendants filed a motion to dismiss the Amended Complaint on several grounds, which this Court denied on January 5, 2012, stating:

> Having reviewed the written filings and heard from the parties, and being otherwise sufficiently advised, the Court finds that the facts alleged preclude a finding at this juncture that Plaintiff's claims are barred by either the statute of limitations or res judicata. *The Amended Complaint makes allegations of fraud and breach of fiduciary duty permeating all of the probate and trust transactions described and perhaps tolling the statute of limitations. In the opinion of the Court, full development of the record is required for a just resolution of this matter.*

(Doc. 45) (emphasis added).

On May 4, 2012, Robert filed a motion to disqualify Betsy's counsel. After a hearing, the Court also denied that motion. (Doc. 92).

Discovery in *Osborn* then moved forward, under the supervision of United States Magistrate Judge Candace J. Smith.

On March 8, 2013, Linda, Judith and Cynthia filed their own lawsuit, naming as defendants Dennis, Griffy, Robert, Martom Properties, and the law firm of Keating, Meuthing & Klekamp.

These sisters allege that the Griffin defendants "engaged in a pattern of racketeering activity to defraud plaintiffs, their sisters, of hundreds of millions of dollars in assets left to the plaintiffs by their parents in their wills and in trusts, and of the honest services of the defendants Dennis B. Griffin and John M Griffin as Co-Executors of their father's estate and as Co-Trustees of his 1967 Trust." (Compl. ¶ 1).

Specifically, these sisters allege that, the brothers realized in the 1980s after both parents became ill that, under their wills and trusts, if Father died first, the "Non-Working Children"[1] would own a majority of the Griffin Industries stock. The sisters further allege that, after Mrs. Griffin died in August 1985, "the Griffin Defendants began executing a scheme to prevent the Non-Working

---

[1] The "non-working children" were all of the daughters and one brother. (Compl. ¶ 29).

4

Children from assuming control of the Company, and to garner the great bulk of the Griffin Industries stock for themselves." (Compl. ¶ 37).

The actions allegedly taken by the Griffin defendants in furtherance of their plan to deprive plaintiffs of their inheritance are numerous, but include the following:

- Causing the Campbell County Probate Court to dismiss Father as the Executor of Mrs. Griffin's Will, and having themselves appointed as Co-Executors;
- Causing themselves to be appointed as Co-Trustees of the Griffin Family Trust and the 1967 Trust;
- Making false representations to plaintiffs regarding the contents of their parents' estate plans and the tax consequences thereof;
- Fraudulently concealing from the plaintiffs knowledge of the contents of their parents' estate plan regarding the passing of the stock of Griffin Industries, specifically that the plans intended for some stock to pass to the sisters rather than cash alone;
- By formulating a "redistribution plan" that ignored their parents' intent and permitted the brothers to purchase Griffin Industries stock at a discounted rate using money taken out of the company, rather than their own funds;
- Misrepresenting to plaintiffs the fair value of Father's stock and making illusory sales to the grandchildren followed by repurchases by defendants at discounted prices;
- Refusing plaintiffs' requests to read their mother's will;
- Amending company bylaws to ensure that the brothers would retain the majority of the company stock;
- After Father's death in 1995, causing the conveyances of certain properties to Martom Properties, which they created as a vehicle for their fraud;
- Defrauding plaintiffs out of their interest in Craig Protein, which property was owned by Father and should have been transferred to the 1967 Trust;

5

- Misappropriating the Cold Spring Property

As to Keating, plaintiffs allege that the firm had a conflict of interest when it assisted Griffy in having Father's estate reopened in order to divest plaintiffs of their interest in the Cold Spring Property. (Compl. ¶ 99). Plaintiffs allege that they were not aware of this wrongdoing until August 2012. (Compl. ¶ 100).

The Holt plaintiffs assert the following claims: (1) RICO (Dennis, Griffy, and Robert); (2) Fraud (Dennis, Griffy, and Robert); (3) Breach of Fiduciary Duty as Executor of Rosellen Griffin's Will (Griffy and Dennis); (4) Breach of Fiduciary Duty as Executors of Father's Will and as Trustees of Father's Trust (Griffy and Dennis); (5) Civil Conspiracy/Aiding and Abetting (Dennis, Griffy, and Robert); (6) Tortious Interference with an Inheritance (Dennis, Griffy, Robert, and Martom); (7) Negligence and/or Gross Negligence Arising out of the Estate Administration for Rosellen Griffin (Griffy and Dennis); (8) Negligence and/or Gross Negligence Arising out of the Estate Administration for Father (Griffy and Dennis); and (9) Professional Negligence (KMK).

On June 26, 2013, the Court consolidated these two actions.

The Keating firm now moves to dismiss the sole claim against it for professional negligence, and the Griffin defendants and Martom move for dismissal of the RICO claim.[2]

### *Analysis*

**A.   Motion to Dismiss RICO Claim**

Subsequent to the briefing on the motion to dismiss the *Holt* plaintiffs' RICO claim, the Griffin defendants moved this Court to take judicial notice of the record in Betsy's recently-unsealed 1990 lawsuit. (Doc. 76). The Court agrees that such judicial notice is proper, and the *Holt* plaintiffs do not object. (Doc. 81). That motion will thus be granted.

The consequence of the Court doing so, however, is that defendants' motion to dismiss the RICO claim must be converted to a motion for summary judgment, allowing time for discovery to create a complete record. *See* Fed. R. Civ. P. 12(d).

As the Court noted at the hearing, such a course is prudent even absent conversion given the complex issues presented by the statute of limitations questions pertaining to the RICO claims, as well as the other issues identified in the parties' briefs. Discovery will

---

[2] It is not clear why Martom joins in this motion to dismiss because the Complaint alleges a RICO claim only against the Griffin defendants. (Compl. at 29).

undoubtedly bring these issues into clearer focus for purposes of summary judgment.

Thus, the motion to dismiss the RICO claim will be denied without prejudice to raising defenses to this claim at the summary judgment stage.

B. **Motion to Dismiss by the Keating Law Firm**

KMK makes three arguments in support of its motion to dismiss the professional negligence claim asserted against it in relation to its involvement in the reopening of Father's probate estate in December 2010.

1. **The Exercise of Supplemental Jurisdiction**

First, KMK urges that the Court should not exercise its supplemental jurisdiction over the claim because it presents a novel question of Kentucky law and the case is in its early stages. Further, they assert that being a party in the *Holt* case creates a "distraction" because KMK has represented defendants in the *Osborn* matter for over two years.

A district court's decision to exercise supplemental jurisdiction is one of discretion. *Ritchie v. United Mine Workers*, 410 F.2d 827, 829 (6th Cir. 1969). A district court shall have supplemental jurisdiction over claims not within its original jurisdiction if the claims "are so related to claims in the action within such original

jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

A district court may decline to exercise supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of state law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c) (2006).

State and federal claims form part of the same case or controversy when the claims are derived from a common nucleus of operative fact. *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 157 (1997).

Additionally, in exercising supplemental jurisdiction, a court should consider judicial economy, convenience, fairness, and comity. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988).

Plaintiffs' claim for professional negligence against KMK clearly arises from a common nucleus of operative fact with respect to the other claims asserted herein because plaintiffs allege, in essence, that KMK assisted defendants

9

in their long-standing scheme to deprive plaintiffs of the Cold Spring property which, they allege, was rightfully theirs under their Father's Estate Plan. What KMK knew about that the status of the Cold Spring property, and the reasons for re-opening Father's probate estate in 2010, are facts that will be thus intertwined with the evidence concerning defendants' actions generally.

For that reason, judicial economy also favors the Court exercising supplemental jurisdiction over this claim. Were plaintiffs forced to refile this claim in state court, there would be a duplication of effort given that the factual underpinnings of the malpractice claim and plaintiffs' other claims are the same. Indeed, given the unusual facts of this case, it is difficult to see how one could thoroughly analyze the malpractice claim without a complete picture of the context in which it arises.[3]

This brings the analysis to the two counter considerations KMK invokes to urge against the exercise of this jurisdiction. First, fairness. KMK asserts that

---

[3] This is particularly true given KMK's argument, discussed in more detail below, that there was no actual conflict of interest since plaintiffs had signed off on a Special Warranty Deed to permit the transfer of the Cold Spring Property, and thus KMK's actions effectuating that transfer were not adverse to plaintiffs. The validity of this argument turns, of course, on the circumstances under which plaintiffs signed those Special Warranty Deeds. This point alone illustrates the entanglement of these claims.

because it is counsel for the Griffin defendants, litigating the malpractice claim against it in this forum would create a "distraction." This argument has some appeal, but it does not outweigh the considerations already identified.

Further, and importantly, the KMK attorney alleged to have signed off on the operative probate documents in 2010 – Claire V. Parrish – is not counsel of record in these cases. Thus, it does not appear that the individual attorneys defending the Griffins here face the prospect of being witnesses as to the malpractice claim. Moreover, KMK has retained its own counsel to defend against this claim.

KMK's remaining argument is that the malpractice claim presents a novel and complex issue of Kentucky law, *i.e.*, whether a malpractice claim can be brought directly against a law firm rather than an individual attorney. The Court rejects this argument.

Courts routinely entertain, under Kentucky law, legal malpractice claims that name law firms as defendants. *See, e.g., Nicely v. McBrayer, McGinnis, Leslie & Kirkland*, 163 F.3d 376 (6th Cir. 1998); *Corporex v. Proskauer Rose, LLP*, 713 F. Supp.2d 678 (E.D. Ky. 2010); *Eriksen v. Kerrick, Stivers, Coyle & Van Zant, P.L.C.*, No. 2011-CA-001879-MR, 2013 WL 2660534 (Ky. Ct. App. June 14, 2013); *Benton v.*

*Boyd & Boyd, PLLC*, 387 S.W.3d 341 (Ky. Ct. App. 2012); *Goodman v. Goldberg & Simpson, P.S.C.*, 323 S.W.3d 740 (Ky. Ct. App. 2009). These cases assume that law firms are a proper defendant, either alone or in conjunction with individual attorneys, to a malpractice claim. KMK has presented no authority to the contrary.[4]

This Court is certainly equipped to make a ruling under Kentucky law. In any event, dismissal on this basis -- which is in the Court's discretion -- is not warranted given the above countervailing considerations.

### 2. Failure to State a Claim

Second, KMK argues that the allegations fail to state a cognizable legal malpractice claim because the interests of KMK's other clients -- the Griffin defendants -- were not "adverse" to plaintiffs with respect to the transfer of the Cold Spring Property. Specifically, KMK argues that plaintiffs had signed Special Warranty Deeds conveying their interests in the property to Griffin Industries. Thus, KMK theorizes, their clients were all working towards the same goal: transfer of the Cold Spring Property to Griffin Industries.

---

[4] KMK's reliance on a case holding, under Ohio law, that such a "direct action" cannot be brought against a law firm is thus misplaced. *See Nat'l Union Fire Ins. Co. of Pittsburgh v. Wuerth*, 540 F. Supp.2d 900 (S.D. Ohio 2007), *aff'd,* 349 F. App'x 983 (6th Cir. 2009).

This argument ignores plaintiffs' allegations that they signed those deeds with a lack of knowledge of the contents of Father's estate plan; a lack of knowledge of the status of the Cold Spring Property; having been told by Robert that they had no claim to the property; and under the duress of threats by Robert that, if they did not sign the deeds, Griffin Industries would be unable to complete the merger with Darling Industries and the shareholders would face a $30 million penalty. (Compl. ¶¶ 71-82).

Thus, whether the circumstances justify a conclusion that plaintiffs' interests and those of their brothers and Griffin Industries with respect to the Cold Spring Property were adverse is not an issue properly resolved on a motion to dismiss.

### 3. Statute of Limitations

Third, KMK asserts that the malpractice claim is barred by the statute of limitations.

"Dismissal of a complaint because barred by the applicable statute of limitations is proper, however, only when the statement of the claim affirmatively shows that the plaintiff can prove *no* set of facts that would entitle him to relief." *Duncan v. Leeds*, 742 F.2d 989, 991 (6th Cir. 1984) (citation and internal quotations omitted).

"Furthermore, the complaint must be liberally construed in determining whether the complaint is time-barred." *Id.*

The Kentucky statute of limitations for professional malpractice provides:

> [A] civil action, whether brought in tort or contract, arising out of any act or omission in rendering, or failing to render, professional services for others shall be brought within one (1) year from the date of the occurrence or from the date when the cause of action was, or reasonably should have been, discovered by the party injured.

KY. REV. STAT. ANN. § 413.245 (2009).

The parties do not dispute that plaintiffs' malpractice claim accrued in 2010 when KMK completed and filed the documents that transferred the Cold Spring Property to Griffin Industries at a time when the law firm also represented plaintiffs.

Nonetheless, it is clear from the parties' briefs that they agree that this case is a proper one for application of the "discovery rule."

Under the "discovery rule," the limitation period "begins to run when the cause of action was discovered or, in the exercise of reasonable diligence, should have been discovered." *Queensway Fin. Holdings Ltd. v. Cotton & Allen, P.S.C.*, 237 S.W.3d 141, 148 (Ky. 2007) (citation omitted).

Plaintiffs allege in their Complaint that they "were not aware of Keating's wrongdoing until August 2012." (Compl. ¶ 100). They do not allege what occurred in August 2012 to make them so aware. Nonetheless, accepting this allegation as true, plaintiffs' claims -- which were filed less than a year later on March 8, 2013 -- would be timely.

In addition, plaintiffs state in their opposition to KMK's motion that they did not become aware of the conflict of interest until a deposition that occurred in the *Osborn* matter on October 16, 2012, "brought Keating's conflict of interest into sharp focus." (Doc. 31 at 15).

While KMK argues that plaintiffs should reasonably have discovered the facts underlying their malpractice claim on earlier dates (the effective date of the merger, the filing of the deeds on December 16, 2010, and a hearing on motion to dismiss in Betsy's suit on January 4, 2012), this Court must accept the facts alleged by plaintiffs to be true. Defendants are no doubt entitled to explore plaintiffs' knowledge during discovery, but under the above authority, dismissal on limitations grounds is inappropriate under Rule 12(b)(6).[5]

---

[5] For this reason, the Court need not reach the parties' arguments regarding the "continuous representation" rule. *See generally Nicely v. McBrayer, McGinnis, Leslie & Kirkland*, 163 F.3d 376 (6th Cir. 1998).

C.  **Dennis Griffin's Deposition**

The Griffin defendants appeal Magistrate Smith's ruling denying their motion for a protective order to prevent the deposition of Dennis Griffin due to his health. Defendants have not yet filed their formal objections to the ruling, however, so the Court will reserve on this issue until briefing on it is complete.

D.  **Expert Reports**

The parties, after extensive discussion at the hearing, were unable to agree on the handling of experts' reports and depositions within the Court's deadlines.

Therefore, the Court will resolve the matter by requiring that verified expert reports be filed by the close of discovery. The reports shall be in the form that the Court can consider them on the summary judgment motions. If it appears that it is necessary to allow depositions of any expert for the resolution of the summary judgment motions, the Court may permit depositions to be taken at that time.

Therefore, having heard the parties, and the Court being sufficiently advised,

**IT IS ORDERED** that:

(1) Plaintiffs' motion for hearing (Doc. 51) and defendants' motion for judicial notice (Doc. 76) be, and are hereby, **GRANTED**;

(2) The Griffin defendants' motion to dismiss the RICO claim (Doc. 17) be, and is hereby, **DENIED WITHOUT PREJUDICE** to raising these defenses on summary judgment;

(3) KMK's motion to dismiss (Doc. 16) be, and is hereby, **DENIED**, also without prejudice to raising these defenses on summary judgment; and

(4) The parties shall file verified expert reports as provided above.

This 5th day of September, 2013.



Signed By:
*William O. Bertelsman* WOB
United States District Judge

TIC: 1 hour, 15 min.